IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-01077-PAB-NRN

ROCKY MOUNTAIN GUN OWNERS, *et. al*,
    Plaintiffs,
v.

JARED POLIS, in his official capacity as Governor of Colorado,
    Defendant.

## THE GOVERNOR'S MOTION FOR A STAY OF THE PRELIMINARY INJUNCTION PENDING APPEAL [DKT. 37]

The Governor respectfully moves for a stay of the Court's preliminary injunction [Dkt. 37] pending appeal. Upon conferral, Plaintiffs' counsel stated they oppose this motion.

### PROCEDURAL BACKGROUND

Colorado's Senate Bill 23-169 raises the minimum age to purchase a firearm in this state from 18 to 21. The new law regulates only the purchase of firearms. Persons 18-to-20-years-old may still lawfully possess firearms under the new law. Plaintiffs challenged the new law as a violation of the Second Amendment and sought a preliminary injunction two months before the law's August 7, 2023, effective date. Dkt. 12. This Court granted the individual Plaintiffs' request on August 7 and preliminarily enjoined enforcement of SB23-169 pending disposition of this case on the merits. Dkt. 37.

Because SB23-169 is a critical component of Colorado's broader effort to combat gun violence, teen suicide, and mass shootings, and because the Court's analysis granting the injunction presents a large number of novel, unresolved issues, the Governor is seeking immediate appellate review of the preliminary injunction order. *See* 28 U.S.C. § 1292(a)(1). The

Governor respectfully requests that the preliminary injunction order be stayed pending that appellate review.

## ARGUMENT

"While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). When seeking a stay of an injunction pending appeal, the movant must ordinarily first seek the stay in the district court. Fed. R. App. P. 8(a)(1).

A motion for a stay of an injunction pending appeal is subject to the same standards as a motion for a preliminary injunction. *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015). The Court considers (1) whether the movant has made a strong showing that they are likely to prevail on the merits of their appeal; (2) whether the movant will be irreparably injured if the stay is not granted; (3) whether granting the stay will substantially harm the opposing parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Bradford v. U.S. Dep't of Labor*, No. 21-cv-03283-PAB-STV, 2022 WL 266805, at *1 (D. Colo. Jan. 28, 2022).

Here, each factor militates in favor of granting a stay pending appeal.

### I. The Governor is likely to prevail on the merits of his appeal.

#### A. The record does not establish that Plaintiffs have standing to obtain an injunction.

The Governor's response to the preliminary injunction motion described how the individual Plaintiffs' allegations were insufficient to establish standing or the Court's subject matter jurisdiction. Dkt. 28 at 8. In a similar Second Amendment case, the Tenth Circuit held that certain plaintiffs lacked standing because they did not have "concrete plans to engage in

conduct" that violated the challenged statute. *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 551 (10th Cir. 2016). The Court noted here that the individual Plaintiffs "do not state that they will purchase firearms after the law goes into effect, that they have previously purchased firearms, or that they have taken any steps to prepare to purchase firearms." Dkt. 37 at 12 n.6. The Court also stated it was not aware of the individual Plaintiffs' current age or whether SB23-169 would apply to the individual Plaintiffs' conduct after the law became effective. *Id.* at 14 n.8. The Court also "exercise[ed] its discretion not to hold a hearing on plaintiffs' motions" without resolving these jurisdictional prerequisites. *Id.* at 4 n.4. Under these circumstances, the Court erred when it held that the individual Plaintiffs' declarations alone established "concrete plans" to violate SB23-169. Dkt. 37 at 12 n.6; *Colo. Outfitters Ass'n*, 823 F.3d at 551. A court is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (citation omitted).

  **B.** **The Governor is likely to prevail under the *Bruen* standard.**

The Supreme Court in *Bruen* announced a new test for evaluating gun laws under the Second Amendment. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). First, the court must determine if the Second Amendment's plain text covers the individual's conduct. *Id.* at 2126. If so, under *Bruen*'s second step, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Id.*

The Governor's response to Plaintiffs' preliminary injunction motion satisfied this standard, noting Plaintiffs had not carried their burden on the first step while also identifying several historical analogues at the second step that show this Nation has a long tradition of placing restrictions on 18-to-20-year-olds' ability to purchase firearms. Dkt. 28 at 13-23. The

3

Governor's evidence included over 320 pages of sworn declarations and exhibits from leading experts. Dkt. 28-1 to 28-5. Plaintiffs rebutted none, choosing to submit no expert declarations whatsoever. The Governor's evidence revealed, for example, that persons under 21 in the 18th century were subject to their parents' authority and thus did not have full contracting rights to purchase firearms (Dkt. 28 at 14; Dkt. 28-1 at 12-13, 20-22); that early American colleges and universities prohibited their students from possessing firearms on campus (Dkt. 28 at 15; Dkt. 28-2 at 14-16); that parents continued to be responsible for their minor children when they served in the militia and were even responsible for supplying the minor's firearm (Dkt. 28 at 15-16; Dkt. 28-1 at 25-27, 34-41); and that states and cities in the Founding and Reconstruction periods adopted restrictions on minors' ability to purchase and use firearms (Dkt. 28 at 17-18; Dkt. 28-2 at 7-9; Dkt. 28-5).

The Court rejected the Governor's evidence. But in doing, the Court misapplied *Bruen* in at least four critical ways. *First*, at *Bruen*'s first step, the Court failed to evaluate the "plain text" of the Second Amendment as "known to ordinary citizens in the founding generation." *District of Columbia v. Heller*, 554 U.S. 570, 577 (2008). The Court did not require Plaintiffs to first demonstrate that the "public understanding of the right when the Bill of Rights was adopted in 1791" included a right for 18-to-20-year-olds to purchase firearms. *Bruen*, 142 S. Ct. at 2137. Indeed, the Court did not require the Plaintiffs to present any evidence at all. Instead, the Court erred by placing the burden of *Bruen*'s first step on the Governor. At step one, the Court held that the Governor had not presented evidence of a historical tradition, only evidence that "states could have regulated 18-to-20 year olds [at the founding] because they lacked rights as minors." Dkt. 37 at 25. By doing so, the Court makes *Bruen* an impossible test. The Governor must point

to a historical restriction on a right before the Plaintiffs have even demonstrated such a right historically existed. But the absence of Founding era regulations cannot indicate a lack of a historical tradition if the Founding generation never understood the Second Amendment to cover the conduct in the first place.

*Second*, at *Bruen*'s second step, the Court held the Governor to an impermissibly high standard that requires a *de facto* historical "dead ringer," not a "historical analogue." *Bruen*, 142 S. Ct. at 2133. On early college bans of firearms, for example, the Court reasoned that colleges did not prohibit students from possessing firearms "because of their age." Dkt. 37 at 35. But the Governor's evidence showed that early colleges acted as a parental substitute over their students, most of whom were 18 to 22 years old. Dkt. 28-1 at 27 ("[M]inors attending college traded strict parental authority for an equally restrictive rule of in *loco parentis*."); Dkt. 28-2 at 14 (same). Requiring a parental substitute would not have been necessary without the common understanding that college students, because of their age, were not yet full-fledged adults and did not enjoy the fully panoply of constitutional rights. While perhaps not a "dead ringer," early college bans on firearms satisfies *Bruen*'s more flexible "historical analogue" rubric.

So, too, with the other Founding and Reconstruction-era restrictions identified by the Governor. The Court was unpersuaded by the Governor's analogues because he "fail[ed] to point to any evidence during the founding era that a total prohibition on the sale of firearms to minors was consistent with the right to bear arms[.]" Dkt. 37 at 39-40. But demanding such a prohibition would amount to a "historical twin" not required by *Bruen*. 142 S. Ct. at 2133. Under *Bruen*, identifying "historical analogues" is sufficient. *Id.*

5

*Third*, the Court's order granting the preliminary injunction effectively nullifies *Heller*'s category of "presumptively lawful" regulations. *Heller*, 554 U.S. at 627 n.26; *accord Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) & 2162 (Kavanaugh, J., concurring) (recognizing that *Bruen* does not disturb this provision of *Heller*). *Heller* stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and governments buildings, or laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27. *Heller* described these presumptively lawful regulations as "exceptions" to the Second Amendment, *id.* at 635, and part of what "the Constitution leaves [to the States as] … tools for combating" modern gun violence, *id.* at 636. The Governor argued that SB23-169 falls into this presumptively lawful category as a condition on the commercial sale of a firearm. Contrary to the Court's holding, Dkt. 37 at 30, the law regulates firearm sellers, not just buyers, preventing them from selling to anyone under 21. *See* Dkt. 1-1, SB23-169, § 2 (enacting § 18-12-112(2)(e)); *id.*, § 3 (enacting § 18-12-112.5(1)(a.3)). The Court disagreed, stating that even regulations falling into *Heller*'s presumptively lawful category are subject to *Bruen*'s two-part test, including the second step where the government carries the burden. Dkt. 37 at 28-31.

This flips *Heller*'s presumption on its head. Instead of presuming that the regulation is constitutional, the government must now bear the burden of showing a historical analogue for all manner of laws that gave the *Heller* Court no pause. Flipping the *Heller* presumption will effectively mean the end of the presumptively lawful category, since few to no historical analogues exist prior to the 20th century for many of the laws that *Heller* held are presumptively

6

valid. *See Bruen*, 142 S. Ct. at 2133 (noting "relatively few" "sensitive places" in the historical record but continuing to recognize the "lawfulness of such prohibitions").

Other courts have correctly rejected this call to invalidate *Heller*'s presumptively lawful category after *Bruen*. *See, e.g.*, *United States v. Minter*, 635 F. Supp. 3d 352, 361 (M.D. Penn. 2022) ("Where *Bruen* did not overturn, abrogate, or otherwise suggest that the longstanding prohibitions identified in *Heller*, including the prohibition of possession of firearms by felons, may no longer be lawful, this Court is bound by the Supreme Court's decision in *Heller*."); *United States v. Price*, 635 F. Supp. 3d 455, 466 (S.D. W. Va. 2022) ("[T]he Supreme Court left generally undisturbed the regulatory framework that keeps firearms out of the hands of dangerous felons through its decision in *Bruen* by reaffirming and adhering to its reasoning in *Heller* and *McDonald*."). These courts rightly hold that *Bruen*'s two-step test need not be applied to presumptively lawful regulations that the Supreme Court has "already signaled" are constitutional. *Minter*, 635 F. Supp. 3d at 358; *accord Price*, 635 F. Supp. 3d at 466.

And *fourth*, the Court gave too little weight to the historical analogues identified by the Governor from the time of the Fourteenth Amendment's ratification. Dkt. 37 at 39-40. As the Governor argued, the Supreme Court does not demand that courts ignore 19th century history. *Heller* looked to how the text was interpreted "from immediately after its ratification through the end of the 19th century." 554 U.S. at 605. And while *Bruen* declined to definitively decide the issue, it nonetheless looked to the historical record from the "18th- and 19th-century" when continuing to uphold *Heller*'s "sensitive places" category. 142 S. Ct. at 2133. Thus, 19th century history should not be discounted in the historical analysis required by *Bruen*.

7

At bottom, the new two-part test required by *Bruen* has reopened an array of questions that lower courts are grappling with. How close of a fit must the historical analogue be? What historical period should be considered? These questions will require time—and a record—to resolve. But for now, the Governor has made a strong showing under existing Supreme Court guidance that SB23-169 is constitutional. He is therefore substantially likely to succeed on the merits of his appeal, justifying a stay of the preliminary injunction pending appeal.

## II. Colorado will be irreparably injured if a stay of the preliminary injunction is not granted pending appeal.

A stay of the preliminary injunction pending appeal is also necessary because Colorado is suffering, and will continue to suffer, irreparable injury each day that SB23-169 remains preliminarily enjoined. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

In just the last five days, some 54 Coloradans aged 18-to-20-years old have attempted to purchase firearms. *See* Ex. 1, Baumgart Decl. Many would not have been eligible if SB23-169 were in effect. More will occur each day that the law remains enjoined. These attempted purchases are especially troubling because firearms are now the leading cause of death for 18-to-20-year-olds in Colorado and the United States. Dkt. 28 at 1 & n.1. With the new school year about to commence, Colorado needs fewer guns in the hands of minors, not more.

## III. Granting a stay of the preliminary injunction will not substantially harm Plaintiffs.

Conversely, granting a stay of the preliminary injunction will not substantially harm Plaintiffs here. To show irreparable harm, Plaintiffs were required to show that their rights were threatened or actually impaired "*at the time relief was sought.*" *Elrod v. Burns*, 427 U.S. 347,

8

373 (1976) (emphasis added). As the Governor argued, the individual Plaintiffs had ample opportunity to acquire firearms in the two months between their preliminary injunction motion and the law's August 7, 2023, effective date. Dkt. 36 at 2-3. If they failed to do so, it was Plaintiffs' own voluntary choice and thus a self-inflicted injury. Such injuries will not support relief from a federal court. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending").

In granting the preliminary injunction, this Court found that Plaintiffs had made the requisite showing because the violation of a constitutional right alone constitutes irreparable harm. Dkt. 37 at 41. But even if true, the Court must "nonetheless engage in [the] traditional equitable inquiry as to the presence of irreparable harm in such a context[.]" *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). Here, the individual Plaintiffs easily could have avoided their claimed harm, if any, by purchasing their desired firearms before SB23-169's effective date. Moreover, other than the bare assertion that the individual Plaintiffs intend to buy firearms for self-defense, the record is devoid of any evidence suggesting that they have concrete plans to engage in conduct that violates Colorado law. *See* Dkt. 37 at 12 n.6 (explaining that Plaintiffs failed to indicate "that they will purchase firearms after the law goes into effect, that they have previously purchase firearms, or that they have taken any steps to prepare to purchase firearms."). Even under a traditional equitable balancing analysis that is generous to Plaintiffs, this falls well short of constituting irreparable harm.

**IV.     The public interest strongly favors staying the preliminary injunction pending appeal.**

Absent a stay of the preliminary injunction pending appeal, Colorado will be foreclosed from enforcing a law enacted by its elected representatives that seeks to combat gun violence, teen suicide, and mass shootings. These tragedies are well-known to Colorado. *See Rocky Mountain Gun Owners v. Polis*, 467 P.3d 314, 317 (Colo. 2020) ("Colorado has been the setting of two of the nation's most notorious mass shootings: Columbine High School in 1999 and the Aurora movie theater in 2012 … Collectively, the shooters killed over two dozen people and wounded scores more."). In fact, the Court's injunction takes effect the same month that schoolchildren across Colorado will be returning to the classroom to begin the new school year. The Court's injunction allows some of those schoolchildren to purchase guns, contrary to the will of the people of Colorado.

By enacting SB23-169, Colorado's General Assembly determined it would serve the public interest and promote public safety if the minimum age to purchase firearms was raised to 21. *See Fish*, 840 F.3d at 755 ("our democratically elected representatives are in a better position than this Court to determine the public interest."). Risk taking peaks in the late teens and early 20s because the human brain is still developing. Dkt. 28-4 at 16. Widely available firearm purchases by this group can threaten public safety. Coloradans will undoubtedly be harmed unless the law can be enforced while judicial review proceeds in the Tenth Circuit. The public interest thus strongly favors a stay.

## CONCLUSION

For the reasons stated above, the Court should enter a stay of its preliminary injunction pending appeal.

Dated: August 11, 2023

PHILIP J. WEISER
Attorney General

*s/ Grant T. Sullivan*
*Grant T. Sullivan*, Assistant Solicitor General*
*Michael T. Kotlarczyk,* Senior Assistant Attorney General*
*Matthew J. Worthington*, Assistant Attorney General*
1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: grant.sullivan@coag.gov; mike.kotlarczyk@coag.gov; matt.worthington@coag.gov
*Attorneys for Defendant Governor Jared Polis*
*Counsel of Record

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2023, I served a true and complete copy of the foregoing **THE GOVERNOR'S MOTION FOR A STAY OF THE PRELIMINARY INJUNCTION PENDING APPEAL** upon all parties herein by e-filing with the CM/ECF system maintained by the court and/or email, addressed as follows:

Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
Voice: (303) 205-7870
Email: barry@arringtonpc.com

*Attorney for Plaintiffs*

*s/ Carmen Van Pelt*
Carmen Van Pelt