IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01077-PAB-NRN

ROCKY MOUNTAIN GUN OWNERS,
TATE MOSGROVE, and
ADRIAN S. PINEDA,

   Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado,

   Defendant.

---

# ORDER

This matter comes before the Court on defendant's Motion for a Stay of the Preliminary Injunction Pending Appeal [Docket No. 42]. Plaintiffs responded. Docket No. 47.

## I. BACKGROUND

Plaintiffs filed this action on April 28, 2023. Docket No. 1. The amended complaint brings one claim on behalf of all plaintiffs alleging that the restrictions in Senate Bill 23-169 ("SB23-169") "infringe on the right of the people of the State, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to Colorado and its political subdivisions by the Fourteenth Amendment." Docket No. 9 at 6, ¶ 20. Plaintiffs seek a declaratory judgment and injunctive relief and seek monetary damages on behalf of plaintiffs Tate Mosgrove and Adrian S. Pineda (the "Individual Plaintiffs"). *Id.* at 6-7, ¶¶ 23-26.

On June 7, 2023, plaintiffs filed a motion for preliminary injunction requesting that the Court preliminarily enjoin the enforcement of SB23-169 arguing that the law is unconstitutional under the Second Amendment. Docket No. 12. On August 3, 2023, plaintiffs filed a motion for a temporary restraining order seeking the same relief. Docket No. 34.

On August 7, 2023, the Court granted plaintiffs' motion for preliminary injunction, enjoining defendant Jared S. Polis, in his capacity as the Governor of the State of Colorado (the "Governor"), and his officers, agents, servants, employees, and all persons in concert or participation with them from enforcing SB23-169. Docket No. 37 at 43. Additional background facts and procedural history can be found in that order, *see id.* at 1-4, and will not be repeated here except as necessary to resolve the Governor's motion.

On August 11, 2023, the Governor filed a notice of appeal from the Court's order on plaintiffs' motion for preliminary injunction. Docket No. 41. Through Docket No. 42, the Governor seeks to stay the Court's preliminary injunction pending his appeal to the Tenth Circuit. Docket No. 42 at 1.

## II. LEGAL STANDARD

"While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d); *see also* Fed. R. App. P. 8(a). In evaluating a motion for an injunction pending appeal, the Court considers (1) whether the movants have made a strong showing that they are likely to

prevail on the merits of their appeal; (2) whether the movants will be irreparably injured if the injunction is not granted; (3) whether granting the injunction will substantially harm the opposing parties; and (4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Bradford v. U.S. Dep't of Labor*, No. 21-cv-03283-PAB-STV, 2022 WL 266805, at *1-2 (D. Colo. Jan. 28, 2022) (observing that the standard for a motion for a stay pending appeal does not warrant a modified or relaxed standard as compared to a motion for a preliminary injunction). The Tenth Circuit's rules provide the same four-factor showing. *See* 10th Cir. R. 8.1(B)-(E). The Supreme Court has explained that "[t]here is substantial overlap between [the factors for a stay or injunction pending appeal] and the factors governing preliminary injunctions; not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal citation omitted).

## III. ANALYSIS

On the first factor, a strong showing of success on the merits, the Governor makes two arguments: (1) the Individual Plaintiffs lack standing to obtain a preliminary injunction and (2) the Governor is likely to prevail under the standard announced in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Docket No. 42 at 2-8.

First, the Governor argues that his response to plaintiffs' motion for preliminary injunction "described how the individual Plaintiffs' allegations were insufficient to

3

establish standing or the Court's subject matter jurisdiction." *Id.* at 2.  The Governor argues that the Individual Plaintiffs lack concrete plans to engage in conduct that violates SB23-169 and that the Court erred by failing to hold a hearing on plaintiffs' motion and relying on plaintiffs' declarations to determine the Individual Plaintiffs had standing to seek a preliminary injunction.  *Id.* at 2-3.  The Governor argues that, "[i]n a similar Second Amendment case, the Tenth Circuit held that certain plaintiffs lacked standing because they did not have 'concrete plans to engage in conduct' that violated the challenged statute."  *Id.* (quoting *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 551 (10th Cir. 2016)).

In its August 7, 2023 order, the Court distinguished *Colo. Outfitters Ass'n*, observing that, "[a]t this phase of the proceedings, the Individual Plaintiffs have done enough to make a clear showing[] that they intend to purchase firearms, but the Court does not pass on the Individual Plaintiffs' showing for purposes of other stages of the case." Docket No. 37 at 12 n.6 (internal quotations and citation omitted).  *Colo. Outfitters Ass'n* evaluated a Second Amendment claim after a nine-day bench trial.  823 F.3d at 542. The Governor does not address the Court's observation that the proof required to establish standing increases as a case proceeds, Docket No. 37 at 8, or explain why the proof required at the conclusion of a bench trial is appropriately compared to the proof required for a preliminary injunction based on a pre-enforcement challenge under the Second Amendment.  *See* Docket No. 42 at 2-3.  Moreover, the Governor does not show it was error to rely on the Individual Plaintiffs' declarations to establish that they had plans to engage in conduct that violated SB23-169 for the purposes of a preliminary

4

injunction.

The Governor argues that the Court should have held a hearing to resolve whether plaintiffs had satisfied the jurisdictional prerequisites because "[t]he Court also stated it was not aware of the individual Plaintiffs' current age." *Id.* at 3. The Court declined to hold a hearing because the parties did not request a hearing and because the material facts were not in dispute. Docket No. 37 at 4 n.4. Moreover, the Court did not lack evidence of the Individual Plaintiffs' ages. In their declarations, the Individual Plaintiffs each stated they are "over the age of 18 but under the age of 21." Docket No. 12-2 at 1, ¶ 2; Docket No. 12-3 at 1, ¶ 2. The Court noted that, going forward, the Individual Plaintiffs' ages would be relevant to determine whether the Individual Plaintiffs' request for relief was moot. Docket No. 37 at 14 n.8. The Governor does not argue that the Individual Plaintiffs have turned 21 rendering their claim moot and does not raise a factual dispute relating to the Individual Plaintiffs' ages.

Next, the Governor argues that he is likely to succeed on the merits of his appeal under the *Bruen* standard because: (1) the Court failed to evaluate the plain text of the Second Amendment; (2) the Court held the Governor to an impermissibly high standard; (3) the Court nullified the presumptively lawful categories of regulations recognized by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008); and (4) the Court did not give sufficient weight to historical analogues from the time of the Fourteenth Amendment's ratification. Docket No. 42 at 3-8.

The Court finds that the Governor has failed to show a strong likelihood of success on the merits. Although the Governor correctly observes that "the new two-part test required by *Bruen* has reopened an array of questions that lower courts are grappling

5

with," *id.* at 8, all four of the arguments raised in the Governor's motion for a stay were directly addressed and rejected in this Court's preliminary injunction order and the Governor provides no compelling reason or new authority to alter the Court's prior rulings.

Initially, the Governor argues that "[t]he Court did not require Plaintiffs to first demonstrate that the 'public understanding of the right when the Bill of Rights was adopted in 1791' included a right for 18-to-20-year-olds to purchase firearms" and erroneously placed the burden on the Governor for the first step of the analysis under *Bruen*. *Id.* at 4 (quoting *Bruen*, 142 S. Ct. at 2137). The Court explicitly ruled that plaintiffs carried the burden of demonstrating the Individual Plaintiffs' conduct is covered by the plain text of the Second Amendment. Docket No. 37 at 19-20. The Court observed that the evidence the Governor supplied was not specific to Second Amendment rights and so it did not rebut plaintiffs' showing 18-to-20 year olds are covered by the Second Amendment. *Id.* at 25. The Governor did not have the burden for the first step of the Court's *Bruen* analysis. The Court simply ruled the Governor failed to rebut plaintiffs' showing.

Next, the Governor argues that the Court required him to supply a historic limitation on 18-to-20 year olds' ability to possess and acquire firearms that was exactly the same as SB23-169 in the second step of its *Bruen* analysis, creating an impermissibly high standard. Docket No. 42 at 5. The Governor argues that rules regarding college students' possession of guns on campus are sufficiently similar to SB23-169 to constitute a historical analogue under *Bruen*. *Id.* The Court, however, did not rule that the Governor's analogues failed because they were not exactly the same as SB23-169;

6

instead, the Court ruled they were not sufficiently analogous under the *Bruen* test. Docket No. 37 at 35.  The Court noted that college rules were like modern regulations of possession of firearms in sensitive places and that a prohibition on purchasing a firearm is not the same as a prohibition on discharging or possessing a firearm.  The Court looked to "why" and "how" SB23-169 burdens Second Amendment rights, *see id.* at 31, and ruled that the Governor had not shown any relevant prohibitions on acquiring firearms that would burden Second Amendment rights in the way SB23-169 does.  *Id.* at 34-35.

Third, the Governor argues that the Court nullifies the presumptively lawful categories of firearm regulations stated in *Heller*.  Docket No. 42 at 6.  In its August 7, 2023 order, the Court disagreed with the Governor's interpretation of *Heller* based on *Bruen*. Docket No. 37 at 29-30.  Even assuming the Court was wrong in its interpretation of *Heller* and *Bruen*, the Court found that the Governor did not show that SB23-169 fits into one of the presumptively lawful categories that *Heller* lists.  *Id.* at 30.  *Heller* referred to regulations of the commercial sale of arms, but the Governor failed to show that SB23-169 was merely a commercial regulation that affects firearm sellers as opposed to a prohibition on acquiring firearms by certain people.  *Id.*  Accordingly, the Governor fails to show it was error to decline to uphold the constitutionality of SB23-169 as presumptively lawful under *Heller*.

Finally, the Governor argues the Court did not give enough weight to analogues from the time of the Fourteenth Amendment's ratification.  Docket No. 42 at 7.  The Court did not "discount" the history the Governor mentions.  Even considering the language in *Bruen* that history at the time of the Fourteenth Amendment could be relevant, the Court

7

ruled that, without any evidence of historic analogues from the time the Second Amendment was ratified, later history cannot overcome the text of the Second Amendment by providing an inconsistent definition. Docket No. 37 at 39-40. The Governor has failed to show any error in the Court's ruling that plaintiffs showed a likelihood of success on the merits or any evidence that the Governor will succeed on the merits of his appeal.

Because the Governor has failed to show a strong likelihood that he will succeed on the merits of his appeal, the Court need not consider the other factors for a stay or injunction pending appeal. *See, e.g., In re Way to Grow, Inc.*, No. 18-cv-03245-WJM, 2019 WL 669795, at *3 (D. Colo. 2019) (declining to consider remaining factors where movants failed to show strong likelihood of success); *Aposhian v. Barr*, 2019 WL 8195243, at *2 (D. Utah 2019) (same). The Court therefore declines to stay the preliminary injunction. *See Hilton*, 481 U.S. at 776; *Nken*, 556 U.S. at 434.

## IV. CONCLUSION

It is,

**ORDERED** that The Governor's Motion for a Stay of the Preliminary Injunction Pending Appeal [Docket No. 42] is **DENIED**.

DATED August 18, 2023.

BY THE COURT:

Philip A. Brimmer
Chief United States District Judge