# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01077-PAB-NRN

ROCKY MOUNTAIN GUN OWNERS,
ADRIAN S. PINEDA, and
MATTHEW M. L. NEWKIRK,

    Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor for the State of Colorado,

    Defendant.

# THE GOVERNOR'S RESPONSE TO PLAINTIFF'S
# MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

"'[T]he right secured by the Second Amendment is not unlimited.'" *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Indeed, "the Second Amendment allows a 'variety' of gun regulations." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 80 (2022) (Kavanaugh, J., joined by Roberts, C.J., concurring) (citation omitted). Such regulations include conditions and qualifications on the commercial sale of arms. *Heller*, 554 U.S. at 626-27. These are "presumptively lawful regulatory measures." *Id*. at 627 n.26; *accord Rahimi*, 602 U.S. at 699. In this case, the Minimum Age Law is an appropriate, presumptively lawful commercial regulation.

The Tenth Circuit has already determined that the Minimum Age Law is a presumptively lawful regulatory measure. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024) ("*RMGO*"). Not only that, but the Minimum Age Law does not prevent 18-to-20-year-olds from possessing guns; it simply imposes a commercial regulatory restriction on their ability to purchase them within the state.

Plaintiffs concede that *RMGO* is a "'fully considered' appellate ruling on an issue of law" that is now "the law of the case." Pls.' Mot. for Summ. J. (Doc. 81), pp 1-2 (citing and quoting *Fish v. Schwab*, 957 F.3d 1105, 1140 (10th Cir. 2020)). They further "concede that the relief they seek is foreclosed by *RMGO*." *Id.* at 2. Defendant agrees. The Minimum Age Law is a presumptively lawful commercial regulation that simply imposes a condition/qualification on the sale of arms and is outside the scope of the Second Amendment's right to keep and bear arms. *RMGO*, 121 F.4th at 119-20. As such, it is constitutional, and this Court should grant summary judgment for Defendant Governor Polis.

1

# ARGUMENT

**I.  The Minimum Age Law is a presumptively lawful regulatory measure.**

Under *Bruen* step one, Plaintiffs must establish that the Second Amendment's text, "as informed by history," encompasses the conduct in which they seek to engage. 597 U.S. at 17, 19; *accord RMGO*, 121 F.4th at 113. In this case, that is the asserted right of persons under 21 years old to purchase guns. At no juncture have Plaintiffs provided any evidence to suggest, let alone establish, such a right informed by history; and this Court, under the party presentation rule, decides the case "based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.6. Consequently, proceeding to *Bruen* step two is neither necessary nor appropriate. Regardless, under step two, the un-rebutted record justifies the regulation as "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

In *RMGO*, the Tenth Circuit ruled that conditions and qualifications on the commercial sale of firearms are recognized presumptively lawful "safe harbors" outside the scope of the plain text of the Second Amendment, at least insofar as such regulatory measures are not abusive. 121 F.4th at 119-20, 122-23. It held, specifically, that the Minimum Age Law was a law imposing conditions or qualifications on the commercial sale or purchase of arms, and that the law was not abusive. *Id*. at 122-23, 128. Importantly, it recognized that the law did not prohibit 18-to-20-year-olds from *possessing* a gun. *Id*. at 105 (recognizing statutory exceptions for active-duty members of the armed forces, peace officers, and those who are P.O.S.T.-certified (citing Colo. Rev. Stat. §§ 18-12-112(2)(g)(I)-(III); 18-12-112.5(1)(a.5)(I)-(III)). Notably, Plaintiffs' motion for summary judgment does not acknowledge these exceptions—exceptions that expressly allow for 18-to-20-year-olds to keep and bear arms.

Plaintiffs argue that language in *Rahimi* requires an individualized assessment to disarm certain persons, which can occur "*only* once a court has found that *the defendant* 'represents a credible threat to the physical safety' of another." Pls.' Mot. for Summ. J. (Doc. 81), p 12 (quoting *Reese v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 127 F.4th 583, 597-98 (5th Cir. 2025) (citing *Rahimi*, 602 U.S. at 699)). There are three problems with that statement.

*First*, *Rahimi*—upon which *Reese* relied and which Plaintiffs cite for the proposition—addressed the category concerning prohibitions on the possession of firearms by felons and those who suffer from mental illness (which is not at issue here); but *Rahimi*'s discussion on that point did not address the separate category concerning laws imposing conditions and qualifications on the sale of arms (which is at issue here). *Rahimi*, 602 U.S. at 699; *Bruen*, 597 U.S. at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) (recognizing same); *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *accord RMGO*, 121 F.4th at 118-19 (synthesizing same and explaining that "[b]ecause [*Heller*'s] 'presumptively lawful regulatory measures' language . . . has not been abrogated, it remains good law").

*Second*, Plaintiffs' position does not resolve the language, consistent from *Heller* to *Rahimi*, reaffirming that the "many [] prohibitions" listed in *Heller*—including conditions and qualifications on the sale of arms—are "presumptively lawful." *Rahimi*, 602 U.S. at 699 (quoting *Heller*, 554 U.S. at 626-27 & n.26). Specifically, "'laws imposing conditions and qualifications on the commercial sale of arms' [remain] presumptively constitutional." *Id*. at 735 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626-27). Indeed, even in *Bruen*, Justice Alito "strongly alluded to the constitutionality of a minimum purchase age of 21." *RMGO*, 121 F.4th at

124 (citing *Bruen*, 597 U.S. at 73 (Alito, J., concurring)). In other words, *Rahimi*'s discussion did not bear on presumptively lawful commercial regulations. Plaintiffs' reading goes too far.

*Finally*, *Reese* is an out-of-jurisdiction case with no precedential value here. Further, the analysis in *Reese* is inapplicable because an individualized determination of dangerousness has no bearing on conditions and regulations of commercial sales, which apply uniformly.

Plaintiffs next spend several pages discussing historical analogues. There are multiple problems with this discussion, too.

*First*, Plaintiffs present no evidence compelling the court to proceed beyond *Bruen*'s first step. Indeed, the Tenth Circuit stopped before proceeding to step two. *RMGO*, 121 F.4th at 120.

*Second*, the Governor's scientific evidence and evidence of historical analogues *was undisputed*. *See* Ex. F to Def.'s Mot. for Summ. J. (Doc. 82-6). *RMGO* recognized this, specifically crediting the Governor's evidence concerning the brain development of those under the age of 21 and the recognized age of majority at the time of the Founding. *Id.* at 126-28. While Plaintiffs rely on *other cases' legal discussion* of historical analogues, they present no evidence of their own. A "party 'cannot overcome the lack of information in the record by statements in the briefs.'" *Gregg v. Raemisch*, 2018 WL 447351, *2 (D. Colo. Jan. 17, 2018) (not reported) (quotations omitted).

*Third*, as *RMGO* explained, at the time of the Founding, the age of majority was 21; thus those younger than 21 were "entirely subsumed under the authority of their parents (usually their fathers) or guardians," and those "between the ages of eighteen and twenty . . . were considered 'minors' or 'infants' from the time of the nation's founding up through the latter half of the twentieth century." *Id.* at 124-25 (citations omitted). This alone easily explains why those under

the age of majority could be required to supply their own guns for purposes of militia service yet not have numerous legal rights—their parents/fathers/guardians provided them with the necessary equipment. *See generally Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 200 (5th Cir. 2012) ("gun safety regulation was commonplace in the colonies," including safety laws regulating gun storage and "who in the community had guns"), *abrogated on other grounds by Bruen*; *see also* §§ 18-12-112(2)(g)(I)-(III); 18-12-112.5(1)(a.5)(I)-(III) (providing exceptions for active-duty military, peace officers, and P.O.S.T.-certified persons).

Next, Plaintiffs argue that the right to keep and bear arms necessarily includes a right to *acquire* arms. But the Minimum Age Law does not prohibit 18-to-20-year-olds from *possessing* or *using* guns. As noted above, 18-to-20-year-olds can do so if they are active-duty military, peace officers, or P.O.S.T.-certified. §§ 18-12-112(2)(g)(I)-(III); 18-12-112.5(1)(a.5)(I)-(III). And guns can be gifted or loaned to those under the age of 21. *See* § 18-12-112(6). Notably, Plaintiffs do not offer any *evidence* to support their interpretation—as required under *Bruen* step one—that to "keep and bear arms includes a right to acquire arms." Pls.' Mot. for Summ. J. (Doc. 81), p 9. The Tennessee Supreme Court, in 1878, recognized that the "right to 'keep and bear arms'" did not "necessarily impl[y] the right to *buy* or otherwise acquire" a firearm. *State v. Callicutt*, 69 Tenn. 714, 715 (1878) (emphasis added); *accord* Thomas M. Cooley, *Treatise on Constitutional Limitations*, 740 n.4 (5th ed. 1883) ("State may prohibit the sale of arms to minors."). In short, to "acquire" a gun is distinct from "keeping" or "bearing" it; but even if it is not, the Minimum Age Law does not prohibit 18-to-20-year-olds from using or possessing a gun.

5

Finally, Plaintiffs argue that regulations on commercial firearms sales cannot be a valid exemption because it "has no limiting principle." Pls.' Mot. Summ. J. (Doc. 81), p 15. This, too, does not bear out. The Supreme Court has repeatedly recognized commercial regulations, and as both the Supreme Court and *RMGO* recognized, such regulations are fully appropriate *when not put to abusive ends*. *Bruen*, 597 U.S. at 38 n.9; *Heller*, 554 U.S. at 635; *RMGO*, 121 F.4th at 122-24, 127-28. Thus, the Supreme Court has *already* identified the very limiting principle Plaintiffs seek: abusive ends.

The Minimum Age Law is a presumptively lawful condition or qualification on the commercial sale of arms, outside the Second Amendment's plain text. Plaintiffs have not established otherwise, so Governor Polis is entitled to summary judgment.

**II.    *RMGO* is a fully considered appellate ruling that is the law of the case.**

Under the law of the case doctrine, once an appellate court establishes "a rule of law and remand[s] the case to the district court, that rule of law 'should continue to govern the same issues in subsequent stages in the same case.'" *Cupps v. Pioneer Canal-Lake Hattie Irrigation Dist.*, 2023 WL 4618334, at *5 (10th Cir. July 19, 2023) (quoting *Arizona v. California*, 460 U.S. 605, 619 (1983); applying *Fish*, 957 F.3d at 1139) (unreported)). "[W]hen a court rules on an issue of law, the ruling 'should continue to govern the same issues in subsequent stages in the same case.'" *Bishop v. Smith*, 760 F.3d 1070, 1082 (10th Cir. 2014) (citation omitted), *cited with approval in Fish*, 957 F.3d at 1139. Thus, among other things, the law of the case doctrine "prevent[s] re-litigation of previously decided issues." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011). This established rule is followed by "both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183

(10th Cir. 1995) (alteration omitted) (reversing where "the district court did not follow the rule [the Tenth Circuit] established in [its] prior Order and Judgment").

So although "the normal rule is that '[r]ulings—predictions—as to the likely outcome on the merits made for preliminary injunction purposes do not ordinarily establish the law of the case,'" where a "*fully considered* appellate ruling on an issue of law made on a preliminary injunction appeal" occurs, that *does* become the law of the case both "in the trial court on remand and in any subsequent appeal." *Fish*, 957 F.3d at 1140 (citing 18B Wright et al., Fed. Prac. & Procedure § 4478.5 (3d ed., updated June 2024); internal quotations omitted; emphasis in original); *see also Rodriguez v. Robbins*, 804 F.3d 1060, 1080-81 (9th Cir. 2015) (conclusions on pure questions of law made on appeal from a preliminary injunction constitute law of the case), *cited with approval in Fish*, 967 F.4th at 1140-41, *rev'd on other grounds sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018).

This is particularly true where there has been a "fully developed factual record"— certainly where, as here, the parties have presented their evidence and experts. *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015) (collecting cases), *cited with approval in Fish*, 967 F.4th at 1140-41. The only exceptions arise where **"**there is new and different evidence, an intervening change in controlling authority, or the prior ruling was clearly erroneous." *Fish*, 967 F.3d at 1141. None of those exceptions applies here, especially where *RMGO* stands as the controlling precedent in the Tenth Circuit.

In short, *RMGO*—a fully considered appellate court ruling on the ultimate legal issues—is the law of the case.[1] The Minimum Age Law is a presumptively lawful "condition or qualification on the sale of arms," and thus "falls outside of the scope of the Second Amendment's right to 'keep and bear' arms." *RMGO*, 121 F.4th at 119-20.

**III.    Plaintiffs are not entitled to a permanent injunction.**

To be entitled to a permanent injunction, Plaintiffs must establish (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) that the injunction would not adversely affect the public interest. *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014). As discussed above, in the Governor's Motion for Summary Judgment, and in *RMGO*, Plaintiffs cannot establish actual success on the merits. This alone is fatal to Plaintiffs' request for a permanent injunction. Nor can they establish irreparable harm if the injunction does not issue—as discussed here and in prior briefing, 18-to-20-year-olds *still* can possess and use guns

---

[1] Plaintiffs argue that *RMGO* determined the relevant time period for assessing historical analogues was the period surrounding the Founding, not the Civil War or Reconstruction. Pls.' Mot. Summ. J. (Doc. 81), pp 13-14. But *RMGO* did not proceed beyond *Bruen* step one, *see* 121 F.4th at 120, so it is difficult to credit Plaintiffs' argument that it rejected the existence of historical analogues under step two, *see PDK Lab'ys, Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring) (noting "the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more"). Nor does *RMGO* say what Plaintiffs assert; on the contrary, *RMGO* simply recognized that what amounts to "longstanding" necessitates a "more objective, definitive standard[]." 121 F.4th at 121.

Regardless, *Bruen* recognized the ongoing reliance on Reconstruction-era laws for historical analogues. *See, e.g.*, 597 U.S. at 27-28, 37-38 (leaving open the understanding that when the states adopted the Fourteenth Amendment they readopted the original Bill of Rights and invested the original Bill of Rights with new meanings of the time (citation omitted)), 60-64 (discussing Reconstruction-era regulations); *see also id.* at 34 (recognizing that historical evidence that predates either the date the Second Amendment was adopted *or the Fourteenth Amendment was adopted* may not illuminate the scope of the right).

(they can receive them as gifts, and the Minimum Age Law neither prohibits them from possessing guns nor requires them to give up any guns), and there are multiple exceptions for 18-to-20-year-olds to purchase guns if they are active military, peace officers, or P.O.S.T.-certified.

Finally, given the evolving understanding of the brains of juveniles and 18-to-20-year-olds, an injunction would directly affect the public interest, specifically by imperiling the public health, safety, and welfare of Colorado citizens, which the Tenth Circuit recognized when it reiterated that guns are "the leading cause of death in Colorado among [18-to-20-year-olds]." *RMGO*, 121 F.4th at 128.

## CONCLUSION

In sum, "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and under *RMGO* alone, Defendant is entitled to summary judgment as a matter of law, *RMGO*, 121 F.4th at 119-20; *see also Fish*, 957 F.3d at 1140-41. Importantly, Plaintiffs have not provided any evidence under step one of *Bruen* sufficient to satisfy their burden. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is required). And Plaintiffs certainly have not borne their "heavy burden" of establishing the Minimum Age Law's facial unconstitutionality. *Golan v. Holder*, 609 F.3d 1076, 1094 (10th Cir. 2010); *accord Rahimi*, 602 U.S. at 693 (emphasizing how a facial challenge is the "most difficult challenge to mount successfully").

Respectfully submitted: March 28, 2025

PHILIP J. WEISER
Attorney General

*s/* Joseph G. Michaels
*JOSEPH G. MICHAELS*\*
Assistant Solicitor General
*PETER G. BAUMANN*\*
Senior Assistant Attorney General
Colorado Attorney General's Office
1300 Broadway, 6th Floor
Denver, Colorado 80203
Telephone: (720) 508-6000
Email: joseph.michaels@coag.gov
  peter.baumann@coag.gov
*Attorneys for Defendant Governor*
  *Jared S. Polis*
\*Counsel of Record