IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01077-PAB

ROCKY MOUNTAIN GUN OWNERS,
ADRIAN S. PINEDA, and
MATTHEW M. L. NEWKIRK,

    Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado,

    Defendant.

# ORDER

The matters before the Court are Plaintiffs' Motion for Summary Judgment [Docket No. 81] and The Governor's Motion for Summary Judgment [Docket No. 82]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

### A. Undisputed Facts[1]

Plaintiffs Rocky Mountain Gun Owners, Adrian Pineda, and Matthew Newkirk bring this action to challenge the constitutionality of Colorado Senate Bill 23-169 ("SB 23-169"), Colo. Gen. Assemb. 23-169, 74th Gen. Assemb., 1st Reg. Sess. (Colo. 2023). Docket No. 81 at 3, ¶ 1; Docket No. 9 at 1, ¶ 1.  SB 23-169 states that it "is unlawful for a person who is less than twenty-one years of age to purchase a firearm."  Docket No. 9 at 4, ¶ 12; Docket No. 50 at 2, ¶ 12.

---

[1] The following facts are undisputed unless otherwise indicated.

Mr. Pineda will turn twenty-one years old in 2026.[2]  Docket No. 81 at 3, ¶ 2.  Mr. Pineda has never been charged with or convicted of any misdemeanor or felony offense.  *Id.*, ¶ 3.  At the time this case was filed, it was Mr. Pineda's intention and desire to lawfully purchase a firearm for lawful purposes, including self-defense in his home.  *Id.*, ¶ 4.  However, Mr. Pineda is precluded from purchasing a firearm by SB 23-169.  *Id.*, ¶ 5.

Mr. Newkirk is over eighteen years old and will turn twenty-one in 2027.  *Id.*, ¶ 6.  Mr. Newkirk has never been charged with or convicted of any misdemeanor or felony offense.  *Id.*, ¶ 7.  At the time Mr. Newkirk became a party to this case,[3] it was Mr. Newkirk's intention and desire to lawfully purchase a firearm for lawful purposes, including self-defense in his home.  *Id.*, ¶ 8.  Specifically, Mr. Newkirk intends to purchase a Ruger American Rifle within the next year.  *Id.*, ¶ 9.  Mr. Newkirk is precluded from purchasing the Ruger American Rifle or any other firearm by SB 23-169.  *Id.* at 4, ¶ 10.

---

[2] Pursuant to the Court's practice standards, "[a]ny party opposing the motion for summary judgment shall, in a section of the brief required by Rule 56.1(a) of the United States District Court for the District of Colorado Local Rules of Practice (Civil) styled 'Response to Statement of Undisputed Material Facts,' admit or deny the asserted material facts set forth by the movant."  Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.  If a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2)-(3); Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.ix.  In his response, defendant did not respond to plaintiffs' statements of material fact.  *See* Docket No. 84.  Therefore, the Court deems these facts to be undisputed.

[3] On January 27, 2025, plaintiffs filed an amended complaint that added Mr. Newkirk as a plaintiff.  Docket No. 74.

Defendant Jared Polis is the governor of the State of Colorado. *Id.*, ¶ 11. Governor Polis has the authority to enforce and control the enforcement of SB 23-169. *Id.*, ¶ 12. Governor Polis has waived his Eleventh Amendment immunity from suit. *Id.*, ¶ 13. He has never disavowed any intention of invoking SB 23-169 against plaintiffs. *Id.*, ¶ 15.[4]

B. **Procedural History**

On April 27, 2023, Governor Polis signed SB 23-169 into law. *Rocky Mountain Gun Owners v. Polis*, 685 F. Supp. 3d 1033, 1039 (D. Colo. 2023), *rev'd and remanded*, 121 F.4th 96 (10th Cir. 2024). SB 23-169 amended § 18-12-112 and § 18-12-112.5 of the Colorado Revised Statutes. *Rocky Mountain Gun Owners*, 121 F.4th at 104. Section § 18-12-112 governs the private transfer of firearms, and § 18-12-112.5 governs firearms transfers by a licensed gun dealer. *Id.* at 104-05. SB 23-169 added

---

[4] In his statement of undisputed facts, Governor Polis includes several facts regarding the history and tradition of firearms regulation in the United States. *See, e.g.*, Docket No. 82 at 19, ¶ 16 (laws restricting the sale of firearms to minors "arose in response to dramatic societal changes, unprecedented violence, and evolutions in firearm technology, manufacturing, and distribution"); *see also id.* at 18, ¶ 9 ("During the Founding era, minors serving in the militia did so under the supervision of parents and other adults."). Plaintiffs deny these facts, *see, e.g.*, Docket No. 83 at 3-4, ¶¶ 9, 16, but do not cite contrary evidence. Instead, plaintiffs rely on conclusions reached by other federal circuits that appear to contradict Governor Polis's assertions of fact. *See, e.g., id.* at 4, ¶ 16 (citing *Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 714 F.3d 334, 342 (5th Cir. 2013) (Jones, J., dissenting)). The Court finds that it is unnecessary to consider whether plaintiffs' reliance on decisions in other federal circuits is sufficient to create a material dispute over Governor Polis's assertions of historical fact. Plaintiffs agree that the record before the Court on the cross motions for summary judgment is the same record considered by the Tenth Circuit in *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024). Docket No. 81 at 6 ("That is the same record that is before the Court now."). Therefore, the Tenth Circuit has already considered the parties' historical evidence and adjudicated its legal consequences for plaintiffs' claims.

two restrictions on the ability of individuals under the age of twenty-one to purchase firearms.  *Id.*  Specifically, SB 23-169 added the following restrictions:

> • **Seller restriction**. "A person who is a licensed gun dealer shall not make or facilitate the sale of a firearm to a person who is less than twenty-one years of age."
>
> • **Buyer restriction**. "It is unlawful for a person who is less than twenty-one years of age to purchase a firearm."

*Id.* at 105 (quoting Colo. Rev. Stat. §§ 18-12-112(2)(e), (2)(f), 18-12-112.5(1)(a.3), (a.5)).

On April 28, 2023, plaintiffs filed suit, challenging the constitutionality of SB 23-169 under the Second Amendment and pursuant to 42 U.S.C. § 1983.  Docket No. 1.  On June 7, 2023, plaintiffs filed a motion for a preliminary injunction, seeking to enjoin the enforcement of SB 23-169.  Docket No. 12.  On August 7, 2023, the Court granted plaintiffs' motion for a preliminary injunction, finding that, under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), Governor Polis had failed to meet his burden to demonstrate that SB 23-169 is consistent with the country's historical tradition of firearms regulation.  *Rocky Mountain Gun Owners*, 685 F. Supp. 3d at 1060.

On August 11, 2023, Governor Polis appealed the Court's order.  Docket No. 41.  On November 5, 2024, the Tenth Circuit reversed the Court's order granting plaintiffs' motion for a preliminary injunction.  *Rocky Mountain Gun Owners*, 121 F.4th at 128.  The court explained that, to "ascertain the constitutionality of a law burdening an individual's exercise of the Second Amendment, we apply a two-part burden-shifting framework first established in *Bruen* and later clarified in [*United States v. Rahimi,* 602 U.S. 680 (2024)]."  *Id.* at 113.

4

>At step one, the plaintiff has the burden of establishing that "the Second Amendment's plain text covers" either the conduct they engaged or intended to engage in. *Bruen*, 597 U.S. at 17, 142 S. Ct. 2111. If the plaintiff meets this burden, "the Constitution presumptively protects that conduct." *Id.* Should the plaintiff not satisfy this burden, they fail to allege a Second Amendment violation and our analysis ends. *Id.*
>
>If the plaintiff does meet their burden, the burden then shifts to the government to justify its regulation by demonstrating that it is "consistent with the *principles* that underpin our" Nation's historical tradition of firearm regulation. *Rahimi*, 144 S. Ct. at 1898 (emphasis added). If the government satisfies this burden, then "a court [may] conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 17, 142 S. Ct. 2111 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10, 81 S. Ct. 997, 6 L.Ed.2d 105 (1961)).

*Id.*

At step one of the *Bruen* analysis, the Tenth Circuit scrutinized the text of the Second Amendment, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The court considered "whether Pineda[5] has met his burden of demonstrating that (1) 18- to 20-year-olds fall within 'the people,' (2) the arms he wishes to purchase constitute protected 'arms,' and (3) purchasing a firearm is encompassed by the right to 'keep and bear' arms." *Rocky Mountain Gun Owners*, 121 F.4th at 114 (footnote added).

First, the court rejected Governor Polis's assertion that, because, "at the Founding, those under 21 lived under the supervision of their parents or guardians and did not possess full rights," plaintiffs are not covered by the Second Amendment. *Id.* at 115, 116 ("Under Governor Polis's definition, then, Pineda and other 18- to 20-year-olds

---

[5] Mr. Newkirk was not a plaintiff in this case at the time of the appeal. *See* Docket No. 74.

5

would not be entitled to First and Fourth Amendment protections either. But, in fact, we know this is not accurate."). The court held that "Pineda, who presents himself to be an ordinary, law-abiding citizen under the age of 21 – is part of 'the people' as defined by the Second Amendment." *Id.* at 116. Second, the court presumed that Mr. Pineda "intends to purchase a firearm that falls under the protection of the Second Amendment" because "the parties do not dispute this element and Pineda cabined his intentions to lawful arms." *Id.* at 117.

As to whether purchasing a firearm is encompassed by the right to "keep and bear" arms, the Tenth Circuit considered the impact of the Supreme Court's decisions in *Bruen* and *Rahimi* on the Supreme Court's prior holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). *Id.* at 119. In *Heller*, the Supreme Court considered the constitutionality of the District of Columbia's general prohibition on possessing handguns. *Heller*, 554 U.S. at 574. The Court found that "handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." *Id.* at 629. However, the Court stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. The Court further noted that it identified these "presumptively lawful regulatory measures only as examples" and that the "list does not purport to be exhaustive." *Id.* at 627 n.26.

In *McDonald*, a plurality of the Court explained that *Heller*'s holding "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.'" *McDonald*, 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626-27).  The *McDonald* Court "repeat[ed] those assurances."  *Id.*

Considering *Heller* and *McDonald*, the Tenth Circuit found that these cases identify "several types of firearm regulations as 'presumptively lawful,'" *Rocky Mountain Gun Owners*, 121 F.4th at 118-19 (quoting *Heller*, 554 U.S. at 627 n.26), namely, "(1) prohibitions on carrying concealed weapons, (2) prohibitions on the possession of firearms by felons and the mentally ill, (3) laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, (4) laws imposing conditions and qualifications on the commercial sale of arms, and (5) 'shall-issue' licensing regimes, under which a general desire for self-defense is sufficient to obtain a concealed carry permit."  *Id.* (internal citations and quotations omitted).  The court concluded that neither *Bruen* nor *Rahimi* cast doubt on the proposition that there are presumptively lawful firearms regulations, which the court identified as creating a "safe harbor" for certain kinds of regulations.  *Id.* at 118 n.5, 119 ("Because the presumptively lawful regulatory measures language, first stated in *Heller,* has not been abrogated, it remains good law." (internal quotations and citation omitted)).

In determining how to apply the presumption of validity within the *Bruen* analytical framework, the court stated that *Bruen* instructs courts to consider the text of

7

the Second Amendment at step one "as informed by history." *Id.* at 120 (quoting *Bruen*, 597 U.S. at 19). It further noted that the list of presumptively lawful regulatory measures identified in *Heller* was based on the "longstanding" practice of such measures in the Nation's history and tradition. *Id.* at 121 (quoting *Heller*, 554 U.S. at 626). As such, the court reasoned that the longstanding nature of these regulations demonstrates that regulations that fall within the safe harbor are beyond the scope of what was commonly understood to infringe the right "to keep and bear" arms. *See id.* at 120. Therefore, the court concluded that it was plaintiffs' burden to overcome the presumption of validity at step one of the *Bruen* analysis. *See id.*

The court found that, because SB 23-169 imposes an age-based restriction on who may purchase a firearm, SB 23-169 falls within the safe harbor of "laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 119-20. However, the court concluded that, under *Bruen*, a condition or qualification on the commercial sale of arms can "be challenged as unconstitutional if it is 'put toward abusive ends.'" *Id.* at 122 (quoting *Bruen*, 597 U.S. at 38 n.9). Nevertheless, the court held that "SB 23-169 does not employ 'abusive ends' that would disqualify it from the presumption of lawfulness" because "a minimum age requirement of 21 is a nondiscretionary condition or qualification on the commercial sale of arms aimed at ensuring guns are held by law-abiding, responsible persons." *Id.* Accordingly, the court found that, "as an aged-based condition or qualification on the sale of arms, SB 23-169 is covered by the safe harbor and, as such, falls outside of the scope of the Second Amendment's right to 'keep and bear' arms." *Id.* at 119-20, 128 ("Laws or regulations imposing conditions or qualifications – such as a minimum purchase age of 21 – on the commercial sale or

8

purchase of arms, when not employed for abusive ends, remain outside the scope of the Amendment's protections under the third prong of *Bruen* step one."). The Tenth Circuit reversed the Court's order granting plaintiffs' motion for a preliminary injunction and remanded the case for further proceedings. *Id.* at 128.

On February 28, 2025, the parties filed cross-motions for summary judgment. Docket Nos. 81, 82. The parties responded to each other's motions on March 28, 2024. Docket Nos. 83, 84.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of*

*Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

Plaintiffs move for summary judgment on their Second Amendment claim and ask that the Court permanently enjoin Governor Polis from enforcing SB 23-169. Docket No. 81 at 1, 5. Governor Polis also moves for summary judgment, arguing that plaintiffs have failed to demonstrate a dispute of material fact regarding plaintiffs' claim and that he is entitled to judgment as a matter of law. Docket No. 82 at 2-3.

"To recover under § 1983, a plaintiff must establish 'the violation of a right secured by the Constitution and laws of the United States.'" *Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent

injunction." *Id.* As to the first element, "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 805 (10th Cir. 2019).

Plaintiffs argue that, pursuant to the court's findings in *Rocky Mountain Gun Owners*, 121 F.4th at 107-17, plaintiffs have demonstrated (1) they have standing,[6] (2) they are considered "people" for purposes of Second Amendment protections, and (3) the "arms" they seek to purchase are covered by the Second Amendment. Docket No. 81 at 6-9. Governor Polis does not dispute these points. *See* Docket No. 82; Docket No. 84.

As to standing, "the proof required to establish standing increases as the suit proceeds. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, while on summary judgment, the plaintiff must set forth by affidavit or other evidence specific facts, . . . which for purposes of the summary judgment motion will be taken to be true." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1163 (10th Cir. 2023) (internal citations and quotations omitted). Considering plaintiffs' undisputed facts regarding their ages and intentions to lawfully purchase a firearm, which is prohibited by SB 23-169, as well as the Tenth Circuit's holding in *Rocky*

---

[6] In the Court's order granting plaintiffs' motion for a preliminary injunction, the Court ruled that plaintiff Rocky Mountain Gun Owners does not have standing in this case. *Rocky Mountain Gun Owners*, 685 F. Supp. 3d at 1045. The Tenth Circuit did not consider Rocky Mountain Gun Owners' standing on appeal, focusing instead on Mr. Pineda. *See Rocky Mountain Gun Owners*, 121 F.4th at 109. Although plaintiffs included Rocky Mountain Gun Owners in their amended complaint, Docket No. 74, the Court's prior order remains unchanged. Rocky Mountain Gun Owners does not have standing.

*Mountain Gun Owners*, 121 F.4th at 108-12, the Court finds that the individual plaintiffs have standing in this case.

The Court is also bound by the Tenth Circuit's interpretation of the text of the Second Amendment. "The law-of-the-case doctrine provides that, 'when a court rules on an issue of law, the ruling should continue to govern the same issues in subsequent stages in the same case.'" *Fish v. Schwab*, 957 F.3d 1105, 1139 (10th Cir. 2020) (quoting *Bishop v. Smith*, 760 F.3d 1070, 1082 (10th Cir. 2014) (internal quotation and citation and quotations omitted) and citing *Arizona v. California*, 460 U.S. 605, 618 (1983)). "Under this doctrine, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Id.* (citation omitted). Courts "will only deviate from the law of the case (1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *Id.* at 1139-40 (citation and quotations omitted).

Governor Polis makes no argument that the Court is not bound by the Tenth Circuit's conclusions that Mr. Pineda is part of the people whose rights are protected by the Second Amendment and that Mr. Pineda wishes to buy a gun that falls within the meaning of "arms" under the amendment. *See* Docket No. 82; Docket No. 84. Therefore, the Court finds that Mr. Pineda has made a sufficient showing under *Bruen* step one. *See Rocky Mountain Gun Owners*, 121 F.4th at 114-17. Because the logic of *Rocky Mountain Gun Owners* applies equally to Mr. Newkirk and Mr. Newkirk has made

a substantially similar showing, the Court finds that the Second Amendment applies to Mr. Newkirk and the Ruger American Rifle he wishes to purchase. Docket No. 81 at 3, ¶ 9.

Regarding the parties' dispute as to whether SB 23-169 infringes plaintiffs' right to "keep and bear" arms, plaintiffs state the following:

> Plaintiffs acknowledge that the Tenth Circuit's decision in [*Rocky Mountain Gun Owners* ("*RMGO*")] was "fully considered" for purposes of [the law of the case doctrine]. Accordingly, *RMGO* is law of the case on remand to this Court, and Plaintiffs concede that the relief they seek is foreclosed by *RMGO*. Nevertheless, they seek to preserve their arguments for further review.

*Id.* at 2. The Court agrees that the Tenth Circuit has resolved plaintiffs' claim. The Tenth Circuit has held that, "as an aged-based condition or qualification on the sale of arms, SB 23-169 is covered by the safe harbor and, as such, falls outside of the scope of the Second Amendment's right to 'keep and bear' arms." *Rocky Mountain Gun Owners*, 121 F.4th at 119-20. Therefore, as a matter of law, plaintiffs cannot establish a violation of a right secured by the Constitution or that they have suffered an irreparable injury from such a violation.

Moreover, plaintiffs make no argument that the law of the case doctrine does not apply to the Tenth Circuit's holding regarding the constitutionality of SB 23-169. *See Fish*, 957 F.3d at 1139-40 (deviation from prior holding is appropriate where the evidence has changed, controlling authority has changed, or the prior decision was clearly erroneous). Although plaintiffs point to recent decisions by federal courts of appeal that are in conflict with the Tenth Circuit's holding, Docket No. 81 at 2 (citing *Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 127 F.4th 583 (5th Cir. 2025); *Lara v. Comm'r Pa. State Police*, 125 F.4th 428 (3d Cir. 2025); and *Worth v.*

13

*Jacobson*, 108 F.4th 677 (8th Cir. 2024)), these cases do not constitute a change in controlling authority. *Marshall v. Dix*, 640 F. Supp. 3d 1033, 1060 (D. Colo. 2022) (plaintiff's "out-of-Circuit authority suggesting otherwise does not obviate this Court's duty to follow the Tenth Circuit's binding precedent" (internal citation omitted)). Next, plaintiffs agree that the record is the same as the record relied on by the Tenth Circuit. Docket No. 81 at 6. Finally, plaintiffs' assertion that the Tenth Circuit's decision was clearly erroneous is perfunctory, and the Court will not consider the argument. Docket No. 81 at 2 ("Plaintiffs intend to argue on appeal that the law of the case doctrine does not apply because *RMGO* was clearly erroneous, as evidenced by this circuit split."); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (internal quotations and citation omitted). Therefore, the Court will deny plaintiffs' motion for summary judgment.

The Court will grant Governor Polis's motion for summary judgment for the same reasons. The Tenth Circuit has held that SB 23-169 is a constitutional regulation of the conditions and qualifications for the sale of firearms in Colorado. *Rocky Mountain Gun Owners*, 121 F.4th at 119-20. Therefore, plaintiffs have failed to show a constitutional violation, and Governor Polis is entitled to judgment as a matter of law.

IV.   **CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Summary Judgment [Docket No. 81] is **DENIED**. It is further

**ORDERED** that The Governor's Motion for Summary Judgment [Docket No. 82] is **GRANTED**. It is further

**ORDERED** that plaintiffs' claim is **DISMISSED with prejudice**.  It is further

**ORDERED** that this case is closed.

DATED June 5, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge